








```
JPP    11/9/01    13:26
3:01-CV-02072    BOYD V. BERT BELL
*1*
*CMP.*
```

JOHN P. STENNETT, SBN: 72815
STENNETT & STENNETT
501 W. Broadway, Suite 820
San Diego, CA 92101
Telephone: (619) 544-5888

BARBARA A. CASINO, SBN: 91952
501 W. Broadway, Suite 820
San Diego, CA 92101
Telephone: (619) 233-3794

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENT BOYD,<br><br>　　　　Plaintiff,<br><br>v.<br><br>BERT BELL/PETE ROZELLE NFL PLAYERS RETIREMENT PLAN; NFL SUPPLEMENTAL DISABILITY PLAN; THE DISABILITY BOARD<br><br>　　　　Defendants. | NO. 01 CV 2072 J (LSP)<br><br>COMPLAINT<br>FOR RELIEF UNDER ERISA<br>(29 U.S.C. § 1001 et seq.)<br><br><br><br>JURY TRIAL DEMANDED |

COMES NOW the plaintiff who alleges against defendants as follows:

### NATURE OF ACTION

1.　This is an action arising under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001 et seq.

### JURISDICTION AND VENUE

2.　This court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

3.　Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2).

4.　Defendant BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN in conjunction with defendant NFL PLAYER SUPPLEMENTAL DISABILITY PLAN

(hereinafter referred to jointly as the "PLAN") is the designated name of the employee benefit plans that provide Long Term disability benefits to vested players of the National Football League and is an employee welfare benefit plan as defined by 29 U.S.C. § 1002(1).

5. On information and belief, plaintiff alleges that defendant THE DISABILITY BOARD performed all claims administration functions and made all decisions regarding plaintiff's eligibility for benefits under the PLAN. Defendant THE DISABILITY BOARD thus stood in a fiduciary relationship with the PLAN and plaintiff and acted as the administrator of the PLAN.

6. At all times herein mentioned plaintiff BRENT BOYD was and is a resident of San Diego.

## GENERAL ALLEGATIONS

7. From 1980 through 1986, plaintiff BRENT BOYD was an offensive lineman with the Minnesota Vikings of the National Football League. As part of his compensation as an inactive vested player of the National Football League plaintiff is entitled to benefits under the terms of the above designated PLANS. The terms of those Plan benefits are set forth in the PLAN documents which are too voluminous to attach to this complaint; however, all parties hereto have copies of the PLAN documents and are aware of the terms and conditions for receiving benefits under the PLAN.

8. The PLAN provides for total and permanent disability benefits to a vested inactive player whose "disabilities arise out of league football activities and result in total and permanent disability before the later of (1) age 45, or (2) twelve years after the end of the player's credited season." The PLAN also provides a lesser benefit if the vested, inactive player's total and permanent disability "arises from other than league football activities."

9. After retiring from the NFL prior to the 1987 season, plaintiff found it very difficult to hold jobs for any length of time. He had difficulty with constant headaches that had been plaguing him since his rookie season when he suffered his first concussion. As an offensive

2

1  lineman, he had his "bell rung" several times thereafter. In addition to dealing with headaches he
2  experienced increasing amounts of nausea, dizziness, and fatigue which made it difficult to hold a
3  job. When he complained of these symptoms while playing for the NFL the Minnesota Vikings'
4  physicians stated that they were merely side effects of his anti-inflammatory medications. After he
5  left the NFL he saw numerous private physicians who undertook a long methodical process that
6  ruled out numerous possible explanations for his symptoms.

7      10.    In 1998, plaintiff's physician became concerned that his fatigue and cognitive
8  symptoms may be the result of depression and thus placed him on anti-depressant medication.
9  However, after trying numerous anti-depression medications without success, plaintiff's physician
10 finally conclude that plaintiff's symptoms were the result of organic brain injury. He was referred
11 to a specialist in organic brain injuries, Dr. Amen, who confirmed with the use of
12 neuropsychological testing and SPEC Scans of the brain that plaintiff had sustained organic brain
13 injury consistent with concussions and by history consistent with plaintiff's employment in the
14 National Football League.

15     11.    After being advised by his physicians that his disabilities arose out of his football
16 league activities plaintiff applied in June of 2000 for football degenerative total and permanent
17 disability benefits with the PLAN, claiming disability benefits from October 1 1999, when he was
18 last employed. Plaintiff's claim that he had a total and permanent disability arising out of league
19 football activity was supported by the following reports of plaintiff's treating physicians:

20     A.    Dennis B. Alters, M.D., Diplomat American Board of Psychiatry and
21 Neurology concluded that "this patient is suffering from mood, personality, and cognitive
22 disorders due to a head trauma. Mr. Boyd is disabled as a result of his injury and is unable to
23 sustain employment."

24     B.    Edward L. Spencer, M.D., Neurologist, concluded after review of history,
25 neuropsychological testing and Spec Scan of the brain that plaintiff had head trauma producing
26 impaired brain function and that, "Mr. Boyd is disabled due to his brain injury. The prognosis for
27 recovery is poor."
28

3

C.  Daniel G. Amen, M.D., Diplomat American Board of Psychiatry and Neurology, concluded that the significant abnormal findings on the SPEC Scan were consistent with head trauma.

12. THE DISABILITY BOARD meets on a quarterly basis to consider claims for benefits. The first meeting after plaintiff's application for disability benefits was held on July 13, 2000. Prior to the meeting THE DISABILITY BOARD referred plaintiff to a neutral neurologist to report on the nature and extent of plaintiff's disability and whether it was related to his league football activity. The neutral neurologist, J. Sterling Ford, M.D., reported to the BOARD that, "The patient's ongoing symptoms including headaches, dizziness, memory and concentration difficulties, fatigue, and emotional changes, are quite common after closed head injury.... In addition, the patient's dizziness and vertigo may represent an injury to the balance system. I have recommended an electronystagmogram to better evaluate that possibility." The electronystagmogram findings were positive, confirming Dr. Ford's suspicions. Dr. Ford concluded that Mr. Boyd was disabled as a result of post-traumatic organic brain disorder and vestibular injuries and that the disability resulted from football related activity.

13. THE DISABILITY BOARD considered plaintiff's application for disability benefits in their meeting of July 13, 2000. THE BOARD tabled plaintiff's application because they wanted plaintiff to see a neutral psychiatrist. Plaintiff saw defendant's neutral psychiatrist, Branko Radisavljevic, M.D. on August 30, 2000. Dr. Radisavljevic reported back to defendant that plaintiff was totally and permanently disabled with a diagnoses of "emotional lability depression due to post-traumatic organic brain disorder" and that the disability was from football related activity.

14. THE DISABILITY BOARD considered Dr. Radisavljevic's report along with the other medical evidence at their next meeting of October 12, 2000. However, again THE DISABILITY BOARD tabled plaintiff's application for disability benefits "for further study."

15. On November 30, 2000, THE DISABILITY BOARD, via telephonic conference decided to grant plaintiff non-football related total and permanent disability benefits in the amount

4

of $1550.00 monthly, retroactive to October 1, 1999, but failed to address his claim for football related disability benefits. Plaintiff's application for football related disability benefits was again considered at THE DISABILITY BOARD'S meeting of January 11, 2000. THE BOARD failed to make a decision on plaintiff's application, demanding that he see another neutral neurologist.

16. Plaintiff saw defendant's newest neutral neurologist, Barry Gordon, M.D. on March 29, 2001. Dr. Gordon's opinion was that plaintiff did not have a disability related to head trauma and that most of his complaints were more typically attributable to depression and/or chronic pain and/or untreated hypertension. Thus, THE BOARD at their next meeting of April 12, 2001, denied plaintiff's application for a football related total and permanent disabiltiy.

17. At all times herein mentioned, the conduct of defendants and each of them, was carried out through the acts and omissions of their officers, agents and employees, and the conduct of said officers, agents and employees was authorized and ratified by defendants and each of them.

## FIRST CAUSE OF ACTION

(For Benefits Under 29 U.S.C. § 1132)

18. Plaintiff realleges and incorporates herein by reference, each and every allegation contained in paragraphs 1 through 17 inclusive of this Complaint as though fully set forth herein at length.

19. Plaintiff has a total and permanent disability arising out of league football activities as those terms are defined under the PLAN. Defendants have acknowledged that plaintiff has a total and permanent disability; however, defendants claim that the disability does not arise from league football activities and thus refuse to provide benefits to which plaintiff is entitled for disability arising out of league football activities.

20. At all times relevant, plaintiff made a timely claim for benefits, performed all of the terms and conditions required of him under the PLAN and met all of the conditions required for him to receive PLAN benefits, beginning in October 1999.

21. Plaintiff has exhausted all administrative remedies provided for under the PLAN to collect the benefits due him under the PLAN.

22. Plaintiff is entitled under the PLAN to continuing disability benefits from October 1, 1999 at the rate of $8,335.00 per month. He is furthermore entitled to reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1).

## SECOND CAUSE OF ACTION

(Breach of Fiduciary Duty)

23. Plaintiff realleges and incorporates herein by reference, each and every allegation contained in paragraphs 1 through 22 inclusive of this Complaint as though fully set forth herein.

24. Defendant, THE DISABILITY BOARD was a fiduciary under the PLAN.

25. Defendants failed to discharge their duties in accordance with 29 U.S.C. § 1104(1)(A) which requires a fiduciary to act "solely in the interest of the participants and beneficiaries and for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

26. Defendants and each of them, in the administration of plaintiff's claim for disability benefits under the PLAN, performed many acts and omissions, including those set forth below that violated their fiduciary duties owed to plaintiff

27. Defendants misconstrued the facts and the law so as to support their denial of disability benefits to plaintiff. Defendants were looking for excuses to deny benefits rather than looking for evidence that would support the payment of disability benefits. This is evidenced by the following facts:

(a) THE DISABILITY BOARD ignored the opinions of plaintiff's treating physicians and ignored the opinions of their first two neutral physicians. THE BOARD refused to make a determination on plaintiff's application for benefits until they were successful in finding one physician that would support a denial. Defendant's shopping for an expert opinion is contrary to the concepts of an even-handed and unbiased appraisal of the claim.

(b) In their search for a physician that would support a denial of benefits, the

BOARD violated the terms of the PLAN and the Department of Labors Rules and Regulations, §2560.503-1 which required that every employee benefit plan shall establish and maintain reasonable claims procedures.

(c)     Defendant failed to set forth specific reasons for the denial of the claim and failed to describe any additional material that was necessary for plaintiff to perfect his claim. In fact, plaintiff was advised by Defendants that he had submitted more than enough information for the BOARD to grant benefits. Yet THE BOARD denied benefits based on one physician's report which was contradicted by at least three board certified neuropsychologists.

(d)     Defendants found that plaintiff's own treating physicians and the initial two neutral physicians opinions were credible enough to rely upon in granting plaintiff benefits for non-football related total and permanent disability; however, refused to acknowledge their credibility, even though the neutral physicians were hand-picked by defendant, with regard to their opinions on the relationship between the disability and football activity. This selective use of an expert's opinions is indicative of THE BOARD'S inability to objectively evaluate the medical evidence.

28.     Defendants and each of them have exhibited an inability to be fair and impartial in reviewing the medical records and making a determination as to whether a beneficiary under the PLAN is entitled to disability benefits.

29.     In an effort to prohibit the practice of shopping for expert opinions, plaintiff is requesting the court to exercise its equitable powers and enjoin defendants and each of them from sending an applicant for disability benefits to more than one neutral physician without the consent of the applicant.

WHEREFORE, plaintiff prays judgment as follows:

(1)     For unpaid PLAN benefits and a declaration that plaintiff is entitled to ongoing disability benefits;

(2)     For attorneys' fees according to proof;

(3)     For an order enjoining defendants from sending an applicant for disability benefits to more than one neutral physician without the consent of the applicant;

7

1  (4)  For costs of suit incurred herein; and,

2  (5)  For such other and further relief as the Court may deem proper, including interest
3  (prejudgment and otherwise) on sums due.

STENNETT & STENNETT
Attorneys for Plaintiff

By _____
JOHN P. STENNETT

8

rules of court. This form, approved by the Judicial Conference ... the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS

BRENT BOYD

### DEFENDANTS

BERT BELL/PETE ROZELLE NFL PLAYERS RETIREMENT PLAN; NFL SUPPLEMENTAL DISABILITY PLAN: THE DISABILITY BOARD

FILED
NOV 8 2001
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
DEPUTY

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
STENNETT & STENENTT
501 W. Broadway, Suite 820
San Diego, CA 92101
619-544-6888

ATTORNEYS (IF KNOWN)

'01 CV 2072 J (LSP)

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

29 U.S.C. Section 1001, et seq.    Claim for disability benefits

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury—Med Malpractice | ☐ 620 Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury—Product Liability | ☐ 630 Liquor Laws | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | PROPERTY RIGHTS | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 650 Airline Regs | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | LABOR | SOCIAL SECURITY | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC (405(g)) | ☐ 892 Economic Stabilization Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 Habeas Corpus | | FEDERAL TAX SUITS | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 540 Mandamus & Other | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | | | | ☒ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | | | | |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $

Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See Instructions):
JUDGE _____  DOCKET NUMBER _____

DATE
November 8, 2001

SIGNATURE OF ATTORNEY OF RECORD
[signature]

UNITED STATES DISTRICT COURT

#076727  $150.00